# IN THE UNITED STATES OF AMERICA
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **TABITHA CHRISTA LATONA WARD,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | **CV-10-BE-1852-E** |
| ] | |
| **ERIC H. HOLDER, JR., and FEDERAL BUREAU OF INVESTIGATION,** ] | |
| ] | |
| **Defendant.** ] | |

## MEMORANDUM OPINION

This matter comes before the court on the "Defendants' Motion to Dismiss Plaintiff's Amended Complaint" (Doc. 13) and the "Plaintiffs (sic) Court Ordered Response to Dismissal Request" (doc. 16), to which the Defendants did not file a reply. The court has thoroughly reviewed the motion, brief, plaintiff's response, and has repeatedly combed through the various iterations of plaintiff's complaint and its exhibits, and for the reasons stated below, finds that the Motion is due to be Granted and the case dismissed with prejudice. A separate order will be filed simultaneously.

## PROCEDURAL HISTORY

On July 12, 2010, Plaintiff filed an application for permission to procedure *in forma pauperis* and for appointment of counsel, along with an initial complaint against "Eric H. Holder, Jr., Attorney General/Department of Justice (Federal Bureau of Investigation), Agency."

1

(Doc.1). The court denied her request for appointment of counsel, granted leave to proceed in forma pauperis, and ordered her to file an amended complaint that complied with the Federal Rules of Civil Procedure and that specifically stated proper relief. She filed another document on August 16, 2010 that attached copies of laws and presumably attempted to recite remedies to which she was entitled, but did not amend her complaint. (*See* Doc. 4). On August 19, 2010, the court again ordered that she file an amended complaint that complied with the Federal Rules of Civil Procedure, particularly Rules 3 and 8 (doc. 5). Instead of filing an amended complaint, she requested reconsideration of the denial of appointment of counsel. (Doc. 6). The court denied reconsideration, noting that the plaintiff has more education (BS and Masters degree) than most *pro se* litigants and that the allegations are not unduly complex, and gave her 14 additional days in which to file an appropriate complaint. (Doc. 7). On September 16, 2010, she filed an amended complaint (doc. 8) which is the basis of the Defendants' Motion to Dismiss.

PLAINTIFF'S AMENDED COMPLAINT

When a plaintiff files a complaint *pro se*, the court must read it more leniently than it would a complaint filed by an attorney. *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), (stating that "[c]ourts [addressing a motion to dismiss] do and should show a leniency to *pro se* litigants not enjoyed by those with a benefit of a legal education), *overturned on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). Even under a more lenient standard, the complaint must still state the essential elements of the claim sought to be asserted. *GJR Invs., Inc.*, 132 F.3d at 1369 (court should refuse to serve as *de facto* counsel or to rewrite a deficient pleading). Reading the plaintiff's amended complaint leniently, it appears to allege that plaintiff seeks to

invoke the court's federal question jurisdiction under 28 U.S.C. § 1331 to review a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981 of the Civil Rights Act of 1866, amended in 1991.

Although the amended complaint contains many extraneous statements, the plaintiff asserts that she was discriminated against based on her race (African American) and sex (female) in being denied a job as special agent; specifically, she alleges discrimination during phase II testing and during the polygraph examination. The plaintiff alleges that "The FBI treated me less favorably than other similarly situated non-African American and/or male applicants" and cites statistics for two years that show slightly higher passage rates for women than men, and slightly lower passage rates for African-Americans than whites. [1]

Beginning with paragraph 19, under "Effects of Discrimination," she states that the

---

[1] In paragraph 7 of the Amended Complaint, plaintiff cites the following statistics: "Ms. Tate wrote, 'Specifically, FY 2006 (the year of the Complainant's initial Phase II interview), 60% of the females (393/655) passed Phase II as compared to 53% of the males (1,305/2,445). In regard to race, 49% of the African-Americans (111/228) passed Phase II as compared to 57% of the whites (1,127/1,994). In FY 2005, 59% of the females 382/648) and 51% of the males (1,270/2,492) passed Phase II. With respect to race 51% of the African/Americans (84/164) and 57% of the whites (1,184/2,077) passed the test. Thus, females have a higher passage rate than males. Although the passage rate for African-American applicants is slightly lower than whites, it is not a significant difference under the EEOC's Uniform Guidelines.' Ms. Tate mentioned the ratio of African-American males to Caucasian males and females with a statement that the Caucasian females have a higher passage rate than the African-American and Caucasian males. However, she *carefully* recused (sic) the ratio of African-American females to the passage or even the selection as an applicant to the African-Americans (sic) males and Caucasian males and females .... Also included as exhibit K is a copy of the Special Agent Employment Statistics which will show a disparage (sic) of African-American females (sic) applicants. Out of 151 qualified African American female applicants (you have to meet at least the minimum qualifications to apply) only 1 was selected for employment. This is a large contrast from the 5710 selected Caucasian male applicants and 290 selected Caucasian female applicants out of the 8485 submitted Caucasian male applications and 1913 submitted Caucasian female applications respectively."

"Agency passed around information concerning my case," "experiencing retaliations in the forms of irreparable damage to my reputation, violations of my privacy," and the "illegal publishing of my intellectual property." In paragraph 21, she further lists "emotional stress, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, injury to credit standing and loss of health"and elaborates on those injuries in subparagraphs a. through i. Under the separate heading of "Relief," she claims "the right to sue and the right of recovery" for violation of her civil rights, including compensatory damages. She then makes claim for "40 million dollars up front... a private Boeing 777 or the equivalent...to be replaced and received every 20 years...fuel, pilots, flight attendants and maintenance..."; "3 million dollars as annual compensation each year for life..."; and "Federal school loans forgiven." The court previously ordered a similar paragraph stricken from the original complaint as not seeking proper relief, and will again strike the request for such relief.

## MOTION TO DISMISS - STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)). A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47). It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Pleadings that contain nothing more than "a formulaic recitation

of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations.  *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570).  To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129

allegations.  *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570).  To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129

The Supreme Court has recently identified "two working principles" for the district court to use in applying the facial plausibility standard.  The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however,  the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. C. at 1949-50.  The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1150.  Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes

their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts. That task is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

In the context of a discrimination claim, the Eleventh Circuit noted that "Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case, it must provide enough factual matter (taken as true) to suggest intentional race discrimination." *Davis v. Coca-Cola Bottling Co.*, 516 F. 3d 955, 974 (11th Cir. 2008). An inference of discrimination may be created when the plaintiff shows that she is a member of a protected class, she was qualified for the job, suffered an adverse employment action, and the employer treated similarly situated individuals outside the protected class more favorably. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999).

## ANALYSIS

1. Proper Party Defendant

The Motion to Dismiss was filed on behalf of "Defendants Eric H. Holder, Jr., United States Attorney General, and the Federal Bureau of Investigation." (Doc. 13). One of the grounds asserted is that the "sole proper defendant" for plaintiff's claims, if any, is the Attorney General under 42 U.S.C. § 2000e-16(c) and that the FBI is due to be dismissed. The court agrees that the FBI would not be a proper defendant in this case, but does not read the plaintiff's amended complaint as naming the FBI as a defendant. The style of the complaint lists the FBI as the agency but only in parenthesis. The court understands the confusion generated by the

identification in paragraph two of the amended complaint of the defendant as "a United States government agency."  If such language were intended to identify the FBI itself as a defendant, it would run afoul of proper pleading. If the plaintiff's intent was to name the FBI as a party defendant, then the motion to dismiss it would be proper and, therefore, should be granted for the purpose of clarification.

2.  Section 1981 Claim(s)

The court agrees with the Defendant's correct statement of the law that Title VII provides the only possible remedy for claims of discrimination in federal employment. *See Brown v. General Services Admin*., 425 U.S. 820, 835 (1976).  Therefore, any claims attempted to be asserted under 42 U.S.C. § 1981 are due to be dismissed.

3.  Retaliation/Invasion of Privacy/Intellectual Property Claims

As noted above, under the heading "The Effects of the Discrimination and Filing the Complaint," the Complaint mentions in passing facts that could perhaps be viewed as attempting to state claims for retaliation, invasion of privacy, or theft of intellectual property.  The court does not read the statements as attempts to state causes of action, but instead as allegations of ways in which the Plaintiff claims she has been damaged by the defendant's alleged discrimination. In the event that the plaintiff intended to state causes of action, they are due to be dismissed as failing to sufficiently state claims upon which relief can be granted.  To the extent that she intends these statements to be explanations of damages, the court views them as support for her claim of compensatory damages, including emotional distress, for which she bears the burden of proof.

4.  Title VII Discrimination

To state a cause of action for discrimination in employment, a plaintiff must allege and plead facts to support the *prima facie* elements of the claim: that she is a member of a protected class, was qualified for the job, suffered an adverse employment action, and that defendant employer treated similarly situated individuals outside the protected class more favorably. *Maniccia*, 171 F.3d at 1368.  The plaintiff is a member of two protected classes as she is an African-American female.  She states that she was qualified for the job of special agent in that she has a Bachelors Degree in Computer Information Systems with a minor in Business Administration and over seven years of professional experience including three-and-a-half years of law enforcement experience. (Doc. 8, para. 8(1)).  She suffered an adverse employment action in that she was not hired as a special agent by the FBI.  She alleges that she was treated less favorably than similarly situated individuals, and cites statistics that she contends support her position.  (Doc. 8, para. 8(7)).

Thus, at first blush, the complaint appears to sufficiently state a cause of action. However, on closer examination it contradicts itself on its face or in the exhibits attached to it and reveals several fatal flaws: (1) she was not qualified for the job because she failed the polygraph test required of all applicants; and (2) she failed to establish either (a) disparate impact or (b) that similarly situated whites and males were more favorably treated. *See Mitchell v. Jefferson County Bd. of* Ed., 936 F.2d 539, 546 (11th Cir. 1991) (explaining that "[a] Title VII plaintiff can make a case by proving either disparate treatment or disparate impact.  To recover for disparate treatment, the employee must prove that the employer intentionally discriminated against her.  On the other hand, a plaintiff can recover under the disparate impact theory by

proving that some employment practice that is facially neutral in its treatment of similarly situated employees has a disproportionately adverse effect on those employees who are a member of some protected class. Proof of intent to discriminate is not required.")

Specifically, plaintiff claims discrimination against her during the 2006 Phase II testing when she received a failing grade, but after filing an administrative complaint, she was given another opportunity to test in 2008. (See doc. 8, paras. 8 (2)-(4)). Having received an opportunity to take another test, she cannot continue to complain of discrimination as to the initial test. She apparently passed the second test and was given a polygraph test on May 8, 2008, during which she alleges she was discriminated against. (See doc. 8, paras. 8(9)-(14) and (1)). In her allegations about the polygraph test, she contains numerous statements allegedly made to her by the examiner, such as "we can 'leave as friends'," being required to sign a *Miranda* waiver of rights before taking the test, being told she failed, and "goodbye." None of these statements, however, demonstrate any bias based on race or sex and do not give any rise to a claim of discrimination in the administration of the test.

She does not, nor can she, claim that the fact she had to take the polygraph test was evidence of discrimination because she does not allege that similarly situated whites or males did not have to take the test. Indeed, the documents she attached to her amended complaint, specifically exhibit H, reflect that *all* applicants for FBI jobs have to take a polygraph test. Thus her failure of the polygraph test required of all applicants renders her unqualified for the job without further allegations of discrimination based on race or sex in the administration of the polygraph test – allegations missing from the complaint as amended.

As noted above, the plaintiff alleges that she was treated "less favorably than other

9

similarly situated non-African American and/or male applicants" regarding her job application. For purposes of this motion, the court views this allegation as a claim of disparate impact.  She supports her allegation with recitation of statistics and the attachment of certain exhibits. Those exhibits, however, contradict the plaintiff's allegations that the FBI only hired one of 151 qualified African-American women.  Specifically, exhibit K used by plaintiff to support her claim demonstrates instead that all 151 African-American women listed on it were employed by the FBI in its workforce on August 31, 2006.  Thus, plaintiff's own submission fails to support her allegation of disparate treatment or disparate impact, if that were her intention.

The amended compliant and its exhibits thus fail to establish that the plaintiff was qualified for the job for which she applied and fails to establish that the defendant discriminated against her by denying her the job of special agent.  Therefore, the complaint must be dismissed.

In granting a motion to dismiss, the court must determine whether dismissal should be without prejudice to allow a plaintiff the opportunity to amend the complaint to try to meet the deficiencies pointed out in the motion to dismiss.  The court need not allow another opportunity to amend a complaint when doing so would be futile. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11 th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The court finds that giving the plaintiff another opportunity to amend in this case would be futile for several reasons.  First, as noted above, the plaintiff's own pleadings establish that she was not qualified for the position and an amendment could not truthfully correct that deficiency.  Second, the court already gave the plaintiff several opportunities to amend the complaint in this case before it was served on the defendant.  As the defendant noted in the motion, this case was not the first effort the plaintiff made to state a cause of action against the defendant for failing to hire

her as a special agent: she had previously filed suit in this court before another judge in which she was likewise afforded several opportunities to correctly plead her case. (See Case No. 1:10-MC-0113-VEH).  Given the factual insufficiency after repeated efforts, the court concludes that dismissal of this case without prejudice would result in futile efforts to replead.  Therefore, the case will be dismissed with prejudice.  The court advises the plaintiff that dismissal with prejudice means both that she cannot file an amended complaint in this case and that she cannot file another suit against the defendant for discrimination against her in refusing to hire her.

      An order will be filed simultaneously.

      Dated this 24th day of January, 2011.

                                                  /s/ Karon O. Bowdre
                                                KARON OWEN BOWDRE
                                                UNITED STATES DISTRICT JUDGE